**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**KENNETH VAXTER**                                                            **PLAINTIFF**

**V.**                                                            **CAUSE NO. 3:09CV76-DAS**

**COMMISSIONER OF SOCIAL SECURITY**                             **DEFENDANT**

## MEMORANDUM OPINION

The claimant, Kenneth Vaxter, seeks judicial review pursuant to 42 U.S.C. § 405(g) of an unfavorable final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding his claim for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The court having duly considered the briefs of the parties, oral arguments[1], the administrative record, and the applicable law, finds as follows, to wit:

### I. PROCEDURAL AND FACTUAL HISTORY

The claimant filed his applications for Social Security disability benefits on September 17, 2005. The application was denied initially and upon reconsideration. After a hearing, an administrative law judge ("ALJ") issued a decision on January 15, 2009, finding that the claimant was not disabled under the Act. On June 9, 2009, the Appeals Council of the Social Security Administration denied the claimant's request for review. Therefore, the ALJ's hearing decision is the Commissioner's final decision, and it is subject to judicial review pursuant to 42 U.S.C. §

---

[1] The court initially announced its ruling during the August 31, 2010 hearing. However, after further consideration, the court vacated that ruling and requested additional briefing from the parties on the issue of whether the claimant met Listing 12.05, specifically considering the ruling of *Randall v. Astrue*, 570 F.3d 651 (5th Cir. 2009).

405(g).

The claimant was born in 1970. He alleged he became disabled on January 1, 2001, due to mental retardation, headaches, and communication problems. The claimant has no physical impairments. At the time of the hearing before the ALJ, the claimant was 37 years old. He testified he completed twelfth grade in special education and that he got a special completion certificate. He worked as a janitor at the University of Mississippi for a year, but he then was "laid off." He later explained that he had been fired from the janitor job because he had been unable to perform sufficiently. However, he also worked at the university as a seasonal groundskeeper for several years. Following his termination, he continued to look for a job. He said he went with his friend to a restaurant about once every two weeks. The claimant testified that he performed activities such as making the bed, washing dishes, sweeping, mopping, washing clothes, and going grocery shopping with his friend. He testified that he could write a letter and mail it and use a phone. He said he could use a phone book but that sometimes he would get tired of looking for a number and ask for help.

The ALJ found the claimant had only one severe impairment: mild mental retardation. However, the ALJ determined that the claimant's impairment did not meet the requirements of any Listing, and particularly not Listing 12.05.

## II. LAW AND STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining her

---

[2] *See* 20 C.F.R. §§ 404.1520 (2010).

burden at each of the first four levels then the burden shifts to the Commissioner at step five.[3] First, the claimant must prove she is not currently engaged in substantial gainful activity.[4] Second, the claimant must prove her impairment is "severe" in that it "significantly limits h[er] physical or mental ability to do basic work activities . . . ."[5] At step three the ALJ must conclude the claimant is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (2010).[6] Fourth, the claimant bears the burden of proving she is incapable of meeting the physical and/or mental demands of her past relevant work.[7] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education and past work experience, that she is capable of performing other work.[8] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that she cannot, in fact, perform that work.[9]

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. §

---

[3]*Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[4]20 C.F.R. §§ 404.1520(b) (2010).

[5]20 C.F.R. §§ 404.1520(c) (2010).

[6]20 C.F.R. §§ 404.1520(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (2010).

[7]20 C.F.R. §§ 404.1520(e) (2010).

[8]20 C.F.R. §§ 404.1520(f)(1) (2010).

[9]*Muse*, 925 F.2d at 789.

405(g) (2010); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

### III. ANALYSIS

The claimant presents only one issue for this appeal of the Commissioner's decision: "The Administrative Law Judge and the Appeals Council failed to consider the adaptive deficits in the determination that Mr. Vaxter did not meet Listing 12.05(C) or 12.05(D)."

Under the theory of presumptive disability, a claimant is eligible for benefits if he has an impairment that meets or equals an impairment found in the Listing of Impairments. 20 C.F.R. §

404.1520(d) (2010); 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010). The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. § 404.1525(a) (2010). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The criteria in the Listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

> Listing 12.05, Mental Retardation, states:
>
> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R., pt. 404, subpt. P, App. 1, § 12.05. This introductory paragraph is what is commonly referred to as the "capsule definition" for this listing. *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007). In addition to meeting this capsule definition, a claimant must also meet one of the four severity prongs for mental retardation as listed in the regulations. *Id.* The listing states that "[t]he required level of severity for mental retardation is met when the requirements in A, B, C, or D are satisfied." *See* 20 C.F.R., pt. 404, subpt. P, App. 1, § 12.05. For our purposes here, we need only examine prongs C & D of Listing 12.05.

First, prong C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." In this case, the ALJ gave the following reasons for his finding that the claimant did not meet prong C of 12.05:

> In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-

5

> related limitation of function. Psychological testing in July 2005 reflects a verbal
> IQ of 70, performance IQ of 73, and a full scale IQ of 69. However, the claimant
> has no additional physical or mental impairment which would impose additional
> limitations on his work-related functioning.

There is no dispute that the claimant did not have any physical impairment which imposed an additional and significant limitation on his ability to work. However, the claimant submits that he suffered from *additional* mental limitations which allowed him to met the Listing 12.05(C). Particularly, the claimant argues that he suffered from adaptive behavior deficits in the following areas: moderate deficits in communication skills, mild deficits in daily living skills, and moderate deficits in socialization skills.[10]

Pursuant to Listing 12.00(C)(1), "adaptive activities" include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." The ALJ both acknowledged and considered that the claimant suffered from moderate adaptive deficits. However, in order to qualify for a disability finding under Listing 12.05(C), a claimant must meet *both* the diagnostic requirements contained in the introductory paragraph ("significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of 22) and the severity criteria contained in paragraph C (an IQ of 60 to 70 and a physical or other mental impairment). *See Randall v. Astrue*, 570 F.3d 651, 655-60 (5th Cir. 2009). In this case, while the claimant's moderate deficits in adaptive functioning help establish the diagnostic requirements for mental retardation under Listing 12.05, his condition does

---

[10]The claimant relies upon the final assessment of North Mississippi Regional Center to support his argument that he suffers from adaptive behavior deficits in the areas of communication skills and socialization skills. Yet, the same report indicates that one of the claimant's "strengths" included "relatively good social conversational skills."

not meet the level of severity required by prong C because there is no evidence in the record of a separate mental impairment imposing *additional* limitations on functioning. Indeed, the record indicates that the claimant has received no ongoing mental health therapy for any depression or anxiety, and he takes no prescribed medication for a mental impairment. *See Johnson v. Bowen*, 864 F.2d 340, 345-46 (5th Cir. 1988) (finding claimant was not disabled under 12.05(C) despite having an IQ of 68 where there was no other severe physical or mental impairment). Moreover, the deficits the claimant points to are functional limitations resulting from his mental retardation, not separate mental impairments. *See* 20 C.F.R. § 404.1520a(b)(2) & (c)(3) (2010). Again, the ALJ found that the claimant suffered from only one severe impairment: mental retardation. Accordingly, substantial evidence supports the ALJ's conclusion that the claimant did not meet Listing 12.05(C).

Likewise, substantial evidence supports the ALJ's conclusion that the claimant's condition did not meet prong D of Listing 12.05, which requires "a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration." Again, while the claimant's deficits in adaptive functioning satisfy 12.05's diagnostic description for mental retardation, there is no evidence in the record supporting the existence of a "marked" degree of any of the relevant functional limitations or any episode of decompensation.

First, the ALJ found the claimant had only "moderate" limitations in his ability to perform daily activities. The ALJ noted the claimant was functioning "in the upper mental retardation and

7

borderline range intellectually" and could perform simple household chores, including vacuuming and making his bed. Additionally, the ALJ pointed out that the claimant cared for his personal needs and went to public places to perform simple activities. With regard to social functioning, the ALJ found the claimant had only mild difficulties. The ALJ noted the claimant liked to go out to eat with friends and enjoyed talking on the phone. Additionally, the ALJ noted that with regard to the claimant's past work, there was no evidence that the claimant had any difficulty interacting appropriately with others. As far as persistence, concentration, and pace are concerned, the ALJ found the claimant had only moderate difficulties in these areas. The ALJ noted that while the claimant had problems maintaining attention and concentration for complex or detailed instructions, he was able to perform simple, routine, repetitive tasks. Lastly, the ALJ noted that though the claimant had moderate adaptive deficits, the record contained no evidence of any episodes of decompensation of extended duration. These findings are supported by the record. Therefore, the ALJ's conclusion that the claimant's mental retardation was not severe enough to meet Listing 12.05(D) was supported by substantial evidence.

## IV. CONCLUSION

Based on the foregoing, it is the opinion of the court that the decision of the Commissioner be affirmed and that this appeal be dismissed. A final judgment consistent with this opinion will be entered.

This, the 28th day of January, 2011.

/s/ David A. Sanders
U. S. Magistrate Judge